UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTINE L. MARTIN,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 11cv5586-JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. (See also Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge, ECF No. 7.) This matter has been fully briefed. (See ECF Nos. 15, 16, 17.)

After considering and reviewing the record, the undersigned finds that despite the fact that the ALJ provided a detailed summary of the facts and some of the medical

evidence, in order to find that plaintiff could perform work, the ALJ relied on a hypothetical situation presented to the vocational expert that differed from the residual functional capacity ("RFC") determination included in her written decision.  The hypothetical situation presented to the vocational expert also differed from the physical capacities evaluation on which the ALJ's RFC determination relied.  Therefore, this matter shall be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## BACKGROUND

Plaintiff, CHRISTINE L. MARTIN, was born in 1971 and was thirty-five years old on her alleged onset date of disability of January 4, 2007 (see Tr. 150). Plaintiff had been working as a para-transit driver for over six years when she suffered an on-the-job injury to her right foot (see Tr. 20, 243-44). Plaintiff's MRI revealed changes consistent with significant peritenosynovitis and a longitudinal tear of her posterior tibial tendon (see Tr. 20). As summarized by the ALJ, "under the care of a treating podiatrist, Gavin Smith, D.P.M., the claimant used cast immobilation, anti-inflammatories, and foot orthosis without relief" (id.). Plaintiff's continued to experience significant and persistent foot pain (Tr. 20-21).

Plaintiff underwent surgical tendon repair in June, 2007 (Tr. 21).  However, plaintiff's residual tendon pain remained, worsening with weight-bearing and ambulation (id.). Thereafter, a second tendon repair occurred in March, 2008, again resulting in plaintiff's immobility (id.). Plaintiff subsequently sustained a lumbar strain and a right

calf strain due to a motor vehicle accident (id.). She also had an MRI demonstrating degenerative changes, among other things (id.; see also Tr. 320-21).

## PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income on October 31, 2007 (see Tr. 16, 150-60). Plaintiff's claims were denied initially and following reconsideration (Tr. 95-98, 101-06). Plaintiff's requested hearing was held before Administrative Law Judge Ruperta M. Alexis ("the ALJ") on October 20, 2009 (Tr. 34-90).

On February 8, 2010, the ALJ issued a written decision in which she found that plaintiff suffered from the severe impairments of a right foot sprain, status post two repairs of the right foot tendon; degenerative disc disease of the lumbar spine; and, depression (Tr. 20). In addition, the ALJ found that although plaintiff was disabled within the meaning of the Social Security Act from January 4, 2007 through December 30, 2008, the ALJ found that on December 30, 2008, "medical improvement occurred that is related to the ability to work, and the claimant has been able to perform substantial gainful activity from that date through the date of this decision" (Tr. 16-17, 22). On June 23, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). See 20 C.F.R. § 404.981.

On July 29, 2011, plaintiff attached a complaint, filed on August 3, 2011, to her motion for leave to proceed *in forma pauperis*, challenging the ALJ's written decision (see ECF Nos. 1, 3). On October 12, 2011, defendant filed the sealed administrative

record pertaining to this matter ("Tr.") (see ECF No. 10). In her Opening Brief, plaintiff raises the following issues: (1) whether or not the ALJ's residual functional capacity ("RFC") finding as presented to the vocational expert incorporated all of plaintiff's limitations; (2) whether or not the ALJ's decision that plaintiff had experienced medical improvement was supported by substantial evidence; and (3) whether or not the proper remedy for the ALJ's errors is a remand for an award of benefits (see ECF No. 15, pp. 2, 11-12).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

     According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security

appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout, supra, 454 F.3d at 1054-55 (reviewing legal errors found to be harmless).

DISCUSSION

1.   The hypothetical presented to the vocational expert differed from the ALJ's residual functional capacity ("RFC") determination and did not include necessarily all of plaintiff's functional limitations.

To determine whether or not a claimant's disability has ceased, the ALJ must follow an eight-step evaluation process for a Title II claim and a seven-step process for a Title XVI claim. 20 C.F.R. §§ 404.1594(f), 416.994(b)(5). At step one (Title II only), the ALJ must determine whether or not the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1594(f)(1). At step two of the Title II sequential analysis, and step one of the Title XVI sequential analysis, the ALJ must determine whether or not a claimant has an impairment or combination of impairments that meets or medically equals "the severity of an impairment listed in appendix 1 of subpart P of part 404 of this chapter [20 C.F.R.]." 20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i).

Next, (step three, Title II/ step two, Title XVI), the Commissioner must determine whether or not there has been any medical improvement in the claimant's condition. 20 C.F.R. § 404.1594(f)(3); see also 20 C.F.R. §§ 404.1594(a), 416.994(b)(5)(ii). Medical improvement is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1), (f)(3).

Subsequently, (step four, Title II/ step three, Title XVI), the ALJ must determine whether or not medical improvement is related to the ability to work, "i.e., whether or not there has been an increase in the residual functional capacity." 20 C.F.R. §§ 404.159(f)(4), 416.994(b)(iii). If there has been no medical improvement or the medical improvement is not related to the claimant's ability to work, at step five, the ALJ next considers whether or not an exception to medical improvement applies. 20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv). At step six of the Title II analysis, (step five, Title XVI), the ALJ must determine whether or not the claimant's current impairments in combination are severe. 20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v). At step seven of the Title II sequential analysis, (step six, Title XVI), the ALJ assesses claimant's residual functional capacity and determines whether or not she can perform her past relevant work. 20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi); Social Security Ruling ("SSR") 82-61, 1982 WL 31387. If the ALJ reaches the final step in the sequential analysis, the burden shifts to the Commissioner to prove that the claimant can perform other work in the national economy, given her age, education, residual functional capacity ("RFC") and past work experience (see Response Brief, ECF No. 16, p. 6). Cf. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); see also 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).

Prior to the final step, the burden to prove disability and continuing entitlement to disability benefits is on plaintiff. Cf. Bowen, supra, 482 U.S. at 146 n.5 (1987); see also 42 U.S.C. § 423(f)(1); 20 C.F.R. §§ 404.1594, 416.994. However, there must be substantial evidence that medical improvement has occurred. 42 U.S.C. § 423(f)(1). According to the federal statute, any "determination made under this section shall be

made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." Id.

The Court already has discussed the medical record supporting the ALJ's finding of plaintiff's disability from January 4, 2007 through December 30, 2008, including persistent tendon pain and lumbar strain and right calf strain due to a motor vehicle accident, see supra, BACKGROUND (Tr. 20-22). The ALJ found that from "January 4, 2007 through December 30, 2008, the claimant's statements concerning the limiting effects of her symptoms are generally credible" (Tr. 21). However, the ALJ found that medical improvement was evidenced by "a comprehensive performance based physical capacities evaluation, sparse mention of right foot symptoms, minimal medical care, and the claimant's full time school attendance and internship" (Tr. 22).

The ALJ discussed many of the relevant facts and evidence in her written decision. The ALJ discussed factors relevant to plaintiff's mental limitations and her activities of daily living (Tr. 22). She noted that plaintiff did most of the household chores, including cooking, cleaning, and grocery shopping (id.). The ALJ also noted that plaintiff had testified that she "drives and attends school full time, 4 days a week, and participates in an internship 1 day a week" (id.). The Court notes that, as pointed out by defendant, plaintiff has not challenged the ALJ's findings on plaintiff's credibility (see Tr. 23; see also Opening Brief, ECF No. 15; Reply, ECF No. 17).

1    Next, the ALJ determined plaintiff's residual functional capacity ("RFC"), finding

2 that plaintiff had the RFC to perform less than the full range of sedentary work (id.). In

3 determining plaintiff's RFC, the ALJ adopted a contemporaneous, performance-based,

4 physical capacities evaluation conducted on December 29, 2008 and signed on December

5 30, 2008 (see Tr. 22, 23-24; see also Tr. 532-33).

    The ALJ discussed treatment records indicating, among other things, that plaintiff

did not exhibit motor strength deficits, and later demonstrated a normal range of motion

(Tr. 24). The ALJ reviewed the MRI results and EMG test results, finding that they did

not support a more restrictive RFC than for a limited range of sedentary work (id.).

    The ALJ next reviewed plaintiff's course of treatment, finding that it strongly

suggested that plaintiff experienced improvement in her symptoms (id.). In this

discussion, the ALJ included the following:

> For example, the claimant testified that she underwent epidural steroid injections for her back symptoms, but that as of October 2008 she stopped taking medication for her right foot. The claimant testified that she did not seek further care for her foot as evidenced by the sparse mention of it in the medical record after 2008. While the claimant continued to seek care for her back, advised treatment efforts have largely been conservative (e.g. physical therapy, a home exercise program, and weight loss) (internal citation to Exhibit 31F, p. 15). Although the claimant continued to present with pain complaints, a physical therapist reported that the claimant's lack of progress was due to her being "very deconditioned" and non-compliant with her home exercise program (internal citation to Exhibit 31F, p. 9).

(Tr. 24).

The ALJ also found that other testimony by plaintiff was inconsistent with more limiting systems, citing plaintiff's school attendance since September 28, 2008 (id.). The ALJ added:

> The claimant testified that she is pursuing her Associates degree as a legal assistant and that she is scheduled to graduate in June 2010. Moreover, the claimant testified that she planned to pursue certification as a paralegal. The claimant testified that she attends school full time Monday through Thursday from 8am to 3:45pm and that she has an internship all day on Fridays. Additionally, the claimant testified that she is able to drive. Such activity strongly suggests that the claimant has been capable of performing a limited range of sedentary work.

(Tr. 24-25).

Regarding plaintiff's mental residual functional capacity, the ALJ noted "sparse mention of depression with some question of partial remission with medication," and found that such evidence did not support a finding of more limiting mental symptoms (Tr. 25 (*citing* Exhibit 31F, p. 15)). The ALJ accorded greater weight to the medical opinion from psychiatrist, Dr. David Lischner, M.D. that plaintiff could perform simple and repetitive tasks, and discussed objective findings from his treatment records (Tr. 25). The ALJ also accorded significant weight to the opinions of the State agency medical consulting doctors, Drs. Peterson and Eather, and adopted them (id.).

Next, the ALJ discussed lay evidence provided by plaintiff's boyfriend and friend and determined that "mild objective findings of the claimant's back condition and sparse mention of the right foot," along with "the claimant's full time attendance at school and weekly internship" strongly supported the ALJ's finding that plaintiff was capable of

ORDER ON PLAINTIFF'S COMPLAINT - 10

some sedentary work (see Tr. 25). The ALJ provided germane reasons to give less weight to the lay testimony. See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).

The ALJ provided a summary of her findings, that her RFC is "supported by the opinion of a physical capacities evaluator and the medical opinions of Dr. Lischner, Dr. Peterson, and Dr. Eather, and is consistent with the claimant's school and internship participation" (Tr. 25). The ALJ's review of the facts and medical evidence and her findings regarding plaintiff's ability to work almost was sufficiently thorough.

In order to find that plaintiff could have performed other work existing in the national economy, the ALJ relied on the vocational expert's testimony (see Tr. 26-27). However, the hypothetical presented to the vocational expert differed from the residual functional capacity ("RFC") determination included in the ALJ's written decision and differed from the physical capacities evaluation on which the RFC relied (see Tr. 22-23, 72-73, 75-532-33). In addition, it does not appear that the ALJ was aware of this fact, demonstrated by her written decision in which she indicates that she "asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity as of December 31, 2008" (Tr. 26). However, as mentioned, the residual capacity as of December 31, 2008 as found in her written decision included the limitation that plaintiff "seldom lift 10 pounds" (Tr. 22), while to the vocational expert, the ALJ included that the hypothetical individual could "lift and carry 10 pounds occasionally" (Tr. 73). The vocational expert even repeated this particular functional limitation: "Ten pounds occasionally," and the ALJ responded: "Right" (id.).

A hypothetical posed to a vocational expert by an ALJ must include all of a claimant's limitations that are supported by substantial evidence in the record, as "an ALJ is not free to disregard properly supported limitations." Robbins v. Comm'r of Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006). Here, the hypothetical presented to the vocational expert differed from the RFC determination included in the ALJ's written decision and from the physical capacities evaluation on which the RFC relied (see Tr. 22-23, 72-73, 532-33). Therefore, the Court cannot conclude that the ALJ did not inadvertently disregard properly supported functional limitations. See Robbins, supra, 466 F.3d at 886. A hypothetical including all of the limitations in the RFC from the ALJ's written decision may have resulted in a different answer from the vocational expert as to whether or not plaintiff could perform other work existing in the national economy. The ALJ relied on the vocational expert's testimony in order to find that plaintiff could perform other work existing in the national economy (see Tr. 26-27). As a result, this matter must be reversed and remanded to the Commissioner for further administrative proceedings. See id.

    2.    <u>Conflicting other medical evidence suggesting that plaintiff's condition did not improve, but rather worsened, should be evaluated following remand</u>.

The Court notes that the ALJ failed to discuss evidence in the record, a physical work performance evaluation by Ms. Julie Garner, PT, DPT, which can be interpreted as suggesting that plaintiff's condition worsened in December, 2008 instead of improved (see Exhibit 2F, i.e., Tr. 254-66; see also Opening Brief, ECF No. 15, pp. 10; Reply; ECF

No. 17, pp. 1-3). The Court also notes that according to the relevant federal regulation, a "determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 404.1594(b)(1). As the Court already has determined that this matter should be remanded for further consideration, see supra, section 1, this aspect of the record should be evaluated explicitly following remand of this matter.

      3.      <u>This matter should be remanded for further administrative proceedings, including a *de novo* hearing</u>.

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Harman</u>, 211 F.3d at 1178 (*quoting* <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. See <u>Smolen</u>, 80 F.3d at 1292. The medical record contains conflicts and is not conclusive that plaintiff remained disabled and did not experience improvement.

1    The ALJ is responsible for determining credibility and resolving ambiguities and
2  conflicts in the medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998);
3  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995).    If the medical evidence in the
4  record is not conclusive, sole responsibility for resolving conflicting testimony and
5  questions of credibility lies with the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th
6  Cir. 1999) (*quoting* <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing*
7  <u>Calhoun v. Bailar</u>, 626 F.2d 145, 150 (9th Cir. 1980))). Therefore, remand is appropriate
8  here to resolve conflicting evidence in the record. <u>See</u> <u>Sample</u>, <u>supra</u>, 694 F.2d at 642;
9  <u>Reddick</u>, <u>supra</u>, 157 F.3d at 722.

## CONCLUSION

12    The ALJ relied on a hypothetical to the vocational expert in order to find that
13  plaintiff could work that differed from the residual functional capacity ("RFC")
14  determination included in her written decision and differed from the physical capacities
15  evaluation on which the RFC relied. The ALJ also failed to discuss conflicting medical
16  evidence suggesting that plaintiff's condition did not improve, but rather worsened.

17    Based on these reasons and the relevant record, the Court **ORDERS** that this
18  matter be **REVERSED** and **REMANDED** to the administration for further consideration
19  pursuant to sentence four of 42 U.S.C. § 405(g).

20    **JUDGMENT** should be for plaintiff and the case should be closed.
21  Dated this 7th day of March, 2012.

_____
J. Richard Creatura
United States Magistrate Judge